IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LOETA A. STICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-14-463-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| ACTING Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Loeta A. Stick requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security

regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

## Claimant's Background

The claimant was born on October 28, 1956, and was fifty-six years old at the time of the administrative hearing (Tr. 28, 157, 159). She has a high school equivalent education, and has worked as a medical records clerk (Tr. 29, 46). The claimant alleges that she has been unable to work since July 23, 2010, due to a back injury and cystic fibrosis (Tr. 179).

## Procedural History

On March 22, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 123-130). Her applications were denied. ALJ Doug Gabbard, II conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 28, 2013 (Tr. 11-19). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 14). Additionally, the claimant must avoid even moderate exposure to fumes, odors, dusts, gasses, and poor ventilation, must avoid concentrated exposure to hazards such as moving machinery and,

unprotected heights, and must avoid extreme heat and cold (Tr. 14). The ALJ also found the claimant requires the ability to alternate sitting and standing every 30 to 45 minutes throughout the workday without leaving her workstation (Tr. 14). The ALJ concluded that the claimant was not disabled because she could return to her past relevant work as a medical records clerk, or alternatively, because there was work she could perform in the regional and national economies, *e. g.*, contact clerk and circulation clerk (Tr. 17-18).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly analyze her credibility, and (ii) by concluding her impairments did not meet the requirements of Appendix 1, Part 404, Subpart P ("the Listings"). The Court finds these contentions unpersuasive.

The ALJ found the claimant's interstitial lung disease, obesity, and degenerative disc disease of the lumbar and cervical spine regions were severe impairments, and that her weight gain, weakness, tinnitus, earache, shortness of breath, heartburn, constipation, diarrhea, incontinence, joint pain, memory loss, hypertension, hyperlipidemia, right hip pain, and insomnia were nonsevere (Tr. 13). The relevant medical records reveal that the claimant was regularly treated for back pain at Chickasaw Nation Medical Center (CNMC) between September 16, 2009 and October 29, 2012 (Tr. 293-325, 392-407, 460-61, 469-86). An MRI of the claimant's lumbar spine on March 17, 2010, showed multilevel degenerative disc disease with bulge and protrusion, and facet joint and ligamentum flavum hypertrophy resulting in moderately tight to tight lateral recess stenosis and spinal stenosis at the L2-3, L3-4, L4-5, and L5-S1 levels (Tr. 238). The

claimant's treatment largely consisted of medication management, although she did receive a series of lumbar epidural steroid injections in April and May 2010 (Tr. 248-50, 262-63).

As to the claimant's respiratory impairments, a CT scan of her chest on June 14, 2010, revealed mild diffuse coarsening of the interstitial pattern (most likely representing mild fibrotic changes), but no associated bronchiectasis (Tr. 285). Dr. Jerry Morgan diagnosed the claimant with interstitial lung disease on October 7, 2010, and regularly treated her for associated complications, including a productive cough, congestion, and shortness of breath, in 2011 and in 2012 (Tr. 318-25, 388-406, 454-58, 463-74). Additionally, the claimant was diagnosed with bronchitis at the CNMC emergency room on March 23, 2012 (two days later she was diagnosed with pneumonia), November 27, 2012, and January 25, 2013 (Tr. 386-87, 490-505, 511-20). The claimant was diagnosed with pneumonia on May 18, 2010 (which persisted until June 7, 2010) and March 25, 2012 (two days earlier she was diagnosed with bronchitis) (Tr. 308-10, 313-17, 384-85). A CT scan of the claimant's chest dated June 28, 2012, revealed bilateral peripheral and lung base interstitial fibrosis with bronchiectasis consistent with usual interstitial fibrosis without definite honeycombing (Tr. 444).

On June 10, 2011, Dr. Ronald Schatzman conducted a consultative physical examination of the claimant (Tr. 350-56). He noted the claimant's lungs were clear to auscultation and without rales, rhonci, or wheezes, and that she had full range of motion without pain in her back (Tr. 351-54, 356). Dr. Schatzman assessed the claimant with obesity and back pain with radiculopathy (by history) (Tr. 352).

On August 26, 2011, the claimant underwent a pulmonary function study (Tr. 360-73). The claimant's FEV1 levels ranged from 1.25-1.56L, which were interpreted to mean the claimant had a moderate decrease in her diffusing capacity (Tr. 370).

State agency physician Dr. Deborah Schmidt completed a Physical RFC Assessment on May 18, 2012, and found the claimant could perform light work with the postural limitations of occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and the environmental limitations of avoiding even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc., and avoiding concentrated exposure to hazards such as machinery, heights, etc. (Tr. 424-30).

At the administrative hearing, the claimant testified that she is unable to work due to shortness of breath and pain in her legs and back (Tr. 31). She stated her back pain is constant and that some days are worse than others (Tr. 34-35). She further stated her back pain radiates into her legs, and that her pain level is dependent on her activity level (Tr. 35-36). As to her breathing, she testified that hot and cold temperatures as well as some cleaning fumes affect her breathing (Tr. 38-39). She further testified she gets bronchitis an average of once per month (Tr. 39). As to specific limitations, she stated she needs to change positions throughout the day every 30 to 45 minutes, could stand for an hour, could walk a block, could lift 20 pounds, but could not squat, and could not bend without having something to hold onto (Tr. 32, 41-42). She further testified that it takes her about a week to clean the house because she can only do "a little at a time" before needing to rest (Tr. 42-43).

In her Function Report, the claimant described her activities as cooking, resting, cleaning the kitchen, and caring for her young granddaughter (Tr. 199). She further stated in her Function Report that she experiences back pain or shortness of breath when she squats, bends, stands, reaches, walks, sits, kneels or climbs stairs, but that she could lift 20 pounds (Tr. 203).

The claimant first contends that the ALJ failed to perform a proper credibility determination. A credibility determination is entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias,* 933 F.2d at 801. But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

The ALJ found "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible," and that her subjective complaints of back and neck pain were out of proportion to the objective medical evidence (Tr. 15-16). In making these findings, the ALJ summarized the medical evidence he relied on, *i. e.*, an MRI showing multilevel degenerative changes and moderate stenosis, her own report of intermittent pain and low level pain rating, x-rays showing degenerative disc disease and diffuse lumbar spondylosis, normal imaging of her right knee, hip, and pelvis, CT scan showing mild fibrotic changes in her lungs, her own

report of improvement in breathing symptoms with medication, her failure to follow prescribed treatment by continuing to smoke, Dr. Schatzman's normal examination findings, non-listing level pulmonary function test results, lack of a surgical recommendation, and lack of objective findings indicative of an incapacitating impairment. Additionally, the ALJ pointed out inconsistencies between the claimant's testimony and the record regarding the frequency of her treatments for bronchitis and the care she provides to her grandchildren (Tr. 17). The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his determination of the claimant's credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

The claimant's final argument is that the ALJ failed to properly evaluate her lung impairment in reaching the conclusion that she did not have an impairment or combination of impairments that meets a listing. Although the claimant bears the burden of proof at step three to establish that she meets or equals the requirements for a listed impairment, *see Fischer–Ross v. Barnhart,* 431 F.3d 729, 733 (10th Cir. 2005), the ALJ's responsibilities at step three of the sequential analysis require him to determine "whether the claimant's impairment is equivalent to one of a number of listed impairments that . . . [are] so severe as to preclude substantial gainful activity." *Clifton,* 79 F.3d at 1009 [quotation omitted]. *Clifton* requires the ALJ to discuss the evidence and explain why a claimant was not disabled at step three. *Id.*, *citing Cook v. Heckler,* 783 F.2d 1168, 1172–73 (4th Cir. 1986). However, the ALJ's failure to make specific findings at step

three can be harmless error when "the ALJ's confirmed findings at steps four and five, coupled with indisputable aspects of the medical record, conclusively preclude [c]laimant's qualification under the listings at step three." *Fischer–Ross,* 431 F.3d at 735. A reviewing court may thus "supply a missing dispositive finding . . . where, based on material the ALJ did at least consider (just not properly), [the court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* at 733-34.

In this case, the ALJ found that the claimant's impairments did not meet or equal any listing. In making such determination, the ALJ specifically noted the claimant did not have the neuro-anatomic abnormalities required for Listing 1.04, nor the medical testing required for Listing 3.04 (Tr. 14). The claimant does not assert she meets the requirements for Listing 1.04, and admits in her brief that she does not meet the testing requirements for Listing 3.04. However, the claimant does contend that she meets the requirements for Listing 3.07, which the ALJ did not mention at step three.

Listing 3.07 requires a showing that the claimant is suffering from bronchiectasis (demonstrated by appropriate imaging techniques) and also requires a showing of either of the following:

> A) Impairment of pulmonary function due to extensive disease. Evaluate under the appropriate criteria in 3.02; or
>
> B) Episodes of bronchitis or pneumonia or hemoptysis (more than blood-streaked sputum) or respiratory failure (documented according to 3.00C), requiring physician intervention, occurring at least once every 2 months or at least 6 times per year. Each inpatient hospitalization for longer than 24 hours for treatment counts as two episodes, and an evaluation of at least 12 consecutive months must be used to determine the frequency of episodes.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.07.

Additionally, Section 3.00C explains that:

> When a respiratory impairment is episodic in nature, as can occur with exacerbations of asthma, cystic fibrosis, bronchiectasis, or chronic asthma bronchitis, the frequency and intensity of episodes that occur despite prescribed treatment are often the major criteria for determining level of impairment.
>
> . . . .
>
> Attacks of asthma, episodes of bronchitis or pneumonia or hemoptysis (more than blood-streaked sputum), or respiratory failure as referred to in paragraph B of 3.03, 3.04, and 3.07, are defined as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours. The medical evidence must also include information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs. For asthma, the medical evidence should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction.

The claimant asserts that she meets both the diagnostic and frequency requirements of Listing 3.07(B) because a CT scan of her chest on June 28, 2012, revealed interstitial fibrosis with bronchiectasis and because she required physician intervention on 7 occasions between March 2, 2012, and March 23, 2013. After reviewing the ALJ's findings at steps four and five, as well as the undisputed medical evidence of record, the Court finds that remand for further consideration at step three would be a formality because no reasonable factfinder could conclude that the claimant's bronchiectasis meets the requirements of Listing 3.07 for the reasons set forth below. *See*

*Fischer-Ross,* 431 F.3d at 733-34. *See also Walters v. Colvin,* 604 Fed. Appx. 643, 647 (10th Cir. 2015) (finding no step three error where evidence to meet a listing was "simply not present in the medical record."). First, the claimant cannot establish the required frequency of a minimum of twelve consecutive months for "[e]pisodes of bronchitis or pneumonia or hemoptysis . . . or respiratory failure . . . requiring physician intervention, occurring at least once every 2 months or at least 6 times per year" because evidence of bronchiectasis first appeared in June 2012[2] and the record does not contain any evidence beyond January 25, 2013. Second, even assuming *arguendo* that the claimant's suggested evaluation dates from March 2, 2012, through March 23, 2013 were appropriate as the requisite twelve-month evaluation period, the record reflects the claimant was treated for interstitial lung disease, not bronchiectasis, and further reflects only one diagnosis of pneumonia and one diagnosis of bronchitis (occurring two days apart) during that time period (Tr. 385, 387). Lastly, for the claimant to satisfy Listing 3.07(B), the medical record must include "information documenting *adherence* to a prescribed regimen of treatment . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00(C) [emphasis added]. Here, the medical records reveal that the claimant did not adhere to her prescribed treatment because she continued to smoke through at least October 19, 2012, despite repeated prescriptions for smoking cessation medication and multiple discussions with providers about smoking cessation (Tr. 293, 295, 297, 320, 322, 390, 396, 398, 453, 459, 462, 481). Because the record shows the claimant cannot meet the

---

[2] In fact, imaging from June 2010 specifically noted an absence of bronchiectasis, and the June 2012 record is the first instance of that diagnosis (Tr. 285, 444).

frequency requirement of Listing 3.07(B), and the adherence requirement of 3.00(C), she is precluded from qualification under Listing 3.07(B) at step three. Thus, "any deficiency in the ALJ's articulation of his reasoning to support his step three determination is harmless." *Fischer-Ross,* 431 F.3d at 735.

## Conclusion

In summary, the Court finds that correct legal standards were applied, and that the decision of the Commissioner is supported by substantial evidence. The Commissioner's decision is therefore hereby AFFIRMED.

**DATED** this 7th day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**